**UNITED STATES of America, Appellee,**

v.

**Learley Reed GOODWIN, Appellant.**

**No. 79–5351.**

United States Court of Appeals,
Fourth Circuit.

Argued Nov. 14, 1980.

Decided Jan. 9, 1981.

Paul W. Spence, Acting Federal Public Defender, Baltimore, Md., for appellant.

Edward M. Norton, Jr., Asst. U. S. Atty., Baltimore, Md. (Russell T. Baker, Jr., U. S. Atty., Baltimore, Md., on brief), for appellee.

Before WINTER, BUTZNER, and WIDENER, Circuit Judges.

WINTER, Circuit Judge:

Convicted of forcible assault of a federal officer in violation of 18 U.S.C. § 111 and fleeing and eluding a police officer in violation of 18 U.S.C. §§ 7 and 13 and Md. Code Ann., Transp. Art., § 21–904, Learley Reed Goodwin appeals. We hold that his conviction of violating § 111 must be reversed, because, under the circumstances of this case, he was denied due process of law when he was indicted and tried for that offense only after he exercised his right to a jury trial on the petty offense and misdemeanor charges originally lodged against him for the same conduct. We see no infirmity, however, in his other conviction, and we affirm the judgment entered thereon.

## I.

Early in the evening of February 2, 1976, defendant was stopped for speeding on the Baltimore-Washington Parkway by a United States Park policeman. After defendant stopped, he emerged from his car to talk to the policeman. The policeman returned with him to the passenger side of defendant's car, and, after obtaining information from defendant's license and registration,

the officer directed his flashlight into defendant's car. The officer saw a clear plastic bag underneath the armrest next to the driver's seat. He then asked defendant to get into the car and to raise the armrest. Defendant did so, but, as he uncovered the bag, he grabbed it, threw it onto the floor, placed the car into gear and rapidly accelerated. As the car started forward, it "fishtailed", striking the officer and knocking him onto the back of the car and then onto the highway. When the officer recovered himself, he returned to his car and, with lights flashing and siren sounding, pursued defendant at a speed reaching ninety-five miles per hour. Nevertheless, defendant eluded the officer in heavy traffic in the District of Columbia.

The next day the officer filed a complaint in the district court charging defendant with various petty offenses and misdemeanors, including assault. A United States Magistrate issued a warrant for defendant's arrest, and on March 11, 1976, defendant was arrested. On March 30, 1976, he was brought before a magistrate. At that hearing defendant sought to have the charges against him dismissed by testifying that he was in Atlanta, Georgia when the incident on the parkway occurred. The magistrate, however, found probable cause, released defendant on personal recognizance, and set a trial date of April 29, 1976.

Defendant did not appear for trial on that date. Later he was found in custody in another jurisdiction on other charges. He was returned to Maryland on May 24, 1979, for trial. At that time the government was represented by a trial attorney from the Department of Justice who was on special detail for two weeks to try petty offenses and misdemeanors before the magistrate. The attorney was familiar with the court papers as well as the officer's incident report, and she had conducted plea negotiations with defendant's lawyer. These negotiations had come to naught because defendant declined to plead and instead elected a jury trial. During the discussions, the prosecutor did not mention the possibility that the United States would seek to have defendant indicted for the felony of forcible assault on a federal officer (18 U.S.C. § 111).

As a result of defendant's election to be tried by a jury, his case was transferred to the district court for trial. The United States Attorney then sought and obtained the indictment charging defendant with a violation of 18 U.S.C. § 111. By affidavit the United States Attorney spelled out his reasons for this action: (1) defendant's conduct on February 2, 1976 was considered to be a serious violation of law, (2) defendant had a lengthy history of violent crime, (3) defendant's conduct on February 2, 1976 was considered to be related to major narcotics transactions, (4) defendant was believed to have committed perjury when he testified at his preliminary hearing that he was in Atlanta, Georgia at the time of the incident on the Baltimore-Washington Parkway, and (5) defendant had failed to appear for trial on April 29, 1976.

Defendant was convicted on the felony charge under 18 U.S.C. § 111 as well as the misdemeanor charge of fleeing or eluding a police officer in violation of Maryland law. His motion to set aside the verdict with respect to § 111 on the ground of prosecutorial vindictiveness was denied on the merits, the district court ruling that there was good cause why the motion was not filed pre-trial as ordinarily required by Rule 12, F.R. Crim.P.

## II.

On this record we readily conclude that the prosecutor did not act with actual vindictiveness in seeking a felony indictment. We must nevertheless decide if the felony prosecution was improper where, as is obvious here, it was not instituted until after defendant elected to be tried by a jury on lesser charges arising from the same conduct, even though the facts which motivated the prosecutor to seek the indictment were available to the government before plea bargaining was conducted and before defendant elected to exercise his right to a jury trial.

The answer to the issue which confronts us is found in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974); and *United States v. Johnson*, 537 F.2d 1170 (4 Cir. 1976), where we construed and applied *Pearce* and *Blackledge*. Briefly stated, *Pearce* held that the due process clause protects a defendant from both actual vindictiveness and the fear of retaliation for exercising his right to appeal. Thus, *Pearce* held that a defendant convicted on retrial after having successfully attacked his first conviction could not be subjected to a more severe sentence except upon "objective information concerning identifiable conduct" occurring after the time of the original sentence. 395 U.S. at 726, 89 S.Ct. at 2081. *Blackledge* applied this principle to the prosecutor in a case where a defendant requested a de novo trial in a court of record following a misdemeanor conviction in a magistrate's court. It held that the prosecutor could not constitutionally respond to a defendant's invoking his statutory right of appeal by bringing a more serious charge against him prior to the trial de novo, at least where the basis for the more serious charge did not arise after the original conviction. In *Blackledge*, the court specifically noted that there was no evidence of actual prosecutorial vindictiveness. Nevertheless, the court found a violation of due process since the circumstances of the case presented "a realistic likelihood of 'vindictiveness.'" 417 U.S. at 27, 94 S.Ct. at 2102. In *Johnson* we held that the due process guarantee against actual and potential prosecutorial vindictiveness prohibited the government from bringing more serious charges against a defendant who was successful in upsetting his guilty pleas to some of the charges for which he was originally indicted, notwithstanding that the record did not establish that the prosecutor maliciously sought the second indictment. We stressed that the rationale of *Pearce* and *Blackledge* was that, since the *fear* of prosecutorial vindictiveness, as well as *actual* vindictiveness, had a chilling effect on a defendant's right to appeal, to attack his conviction collaterally, or to be tried de novo, the due process clause required that a defendant be freed of the apprehension of such a retaliatory motivation as well as actual retaliation.

■ Applied to this case, this well-established principle manifestly requires that defendant's felony conviction be set aside. Defendant had a constitutional right to a jury trial on the misdemeanor and petty offense charges. The due process clause would not permit retaliation for the exercise of that right. Under *Blackledge*, we need not determine whether retaliation actually occurred in this case. It is enough that the circumstances surrounding the felony indictment give rise to a genuine risk of retaliation. Lest exercise of the right to a jury trial be chilled, the due process clause requires that defendant be freed of the apprehension of retaliation by prohibiting the bringing of more serious charges, once the right was exercised, at least where there is no showing that the charges could not have been brought before defendant made his election for a jury trial.

We turn to the government's arguments as to why we should reach a different conclusion. First, the government contends that the more recent Supreme Court decision in *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), undercuts defendant's reliance on the apprehension of vindictiveness as a basis for finding a due process violation. In *Bordenkircher*, the Court held that a prosecutor does not violate due process by threatening to increase charges in the course of plea bargaining and then following up on that threat after plea negotiations break down. *Bordenkircher* is easily distinguishable from *Blackledge* and from the present case. In *Bordenkircher* the prosecutor's intent to press for more serious charges was made known at the outset of negotiations, and the Court explicitly limited its holding to that factual situation:

This is not a situation, therefore, where the prosecutor without notice brought an additional and more serious charge after plea negotiations relating only to the

original indictment had ended with the defendant's insistence on pleading not guilty. As a practical matter, in short, this case would be no different if the grand jury had indicted Hayes [on the more serious charge] from the outset, and the prosecutor had offered to drop that charge as part of the plea bargain.

434 U.S. at 360–61, 98 S.Ct. at 666. Specifically distinguishing *Blackledge*, the Court noted:

> In [*Blackledge*] the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation 'very different from the give-and-take negotiation common in plea bargaining....'

*Id.* at 362, 98 S.Ct. at 667 (citations omitted).

The government relies on one passage from *Bordenkircher* which purportedly limits the rationale of *Blackledge*:

> The Court has emphasized that the due process violation in cases such as [*Blackledge*] lay not in the possibility that a defendant might be deterred from the exercise of a legal right, see *Colten v. Kentucky*, 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584; *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714, but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction. See *Blackledge v. Perry*, supra [417 U.S.] at 26–28, 94 S.Ct. at 2101–02, 40 L.Ed.2d 628.

434 U.S. at 363, 98 S.Ct. at 667. From this, the government argues in its brief that the Court shows "its fundamental concern was actual, rather than the defendant's perceived, prosecutorial retaliation." We think, however, that the government has missed the point. *Colten* and *Chaffin*, cited by the Supreme Court in the quoted passage, found the rationale of *Blackledge* inapplicable where, upon retrial, a defendant was subjected to more than his initial punishment by a jury wholly unaware of the punishment following the initial conviction or by a judge different than the one who imposed the original sentence. In those cases, even though the possibility of increased punishment might have deterred a defendant in exercising his right to appeal, the deterrent did not rest on the possibility of retaliation since the judge or jury in the second trial had no reason to be vindictive. In citing *Colten* and *Chaffin*, therefore, the Supreme Court suggests only that a deterrent arising solely from the risk of higher punishment may be permissible while a deterrent arising from the risk of vindictiveness is not.

Unlike the defendants in *Colten* and *Chaffin*, but like the defendant in *Blackledge*, Goodwin faced increased charges brought by a prosecutor who had an incentive to deter misdemeanor defendants from exercising a right that would "require increased expenditures of" his own time. *Blackledge, supra*, 417 U.S. at 27, 94 S.Ct. at 2102. Thus, for defendant and those similarly situated, "the danger that the [government] might be retaliating" is real. *Bordenkircher, supra*, 434 U.S. at 363, 98 S.Ct. at 667.

Next the government argues that we should reconsider *Johnson*. It stresses that the Fifth and Sixth Circuits have adopted a balancing test in cases which involve prosecution on increased charges after a defendant's exercise of procedural rights, weighing the extent to which the allowance of increased charges will chill a defendant's exercise of his rights against the extent to which disallowance will limit the exercise of the prosecutor's discretion. *See United States v. Andrews*, 633 F.2d 449 (6 Cir. 1980); *Jackson v. Walker*, 585 F.2d 139, 145 (5 Cir. 1978); *Hardwick v. Doolittle*, 558 F.2d 292 (5 Cir. 1977), *cert. denied*, 434 U.S. 1049, 98 S.Ct. 897, 54 L.Ed.2d 801 (1978).[1]

---

1. These cases hold that, once a defendant establishes a risk of vindictiveness, the burden shifts to the government to prove a legitimate reason for the increased charges. To the extent that these cases permit the government to rebut defendant's prima facie showing through objective proof that the increased charges could not have been brought in the first instance, they do not depart from our holding here. To the extent that they permit a more

In short, the government takes strong exception to our holding in *Johnson* that circumstances giving rise to a genuine risk of vindictiveness create a *per se* violation of the due process clause, absent proof by objective evidence that the increased charges could not have been brought in the first instance.

To this argument, there are several answers. First, it is inappropriate for us to overrule the decision of another panel of this court. Such a step is reserved for the court sitting in banc. More importantly, we are persuaded that our initial reading of *Blackledge* was correct and should not be altered. *Blackledge* suggests no balancing test. It adopts a prophylactic rule designed to spare courts the unseemly task of probing the actual motives of the prosecutor in cases where objective circumstances suggest a realistic possibility of vindictiveness.

If the government wishes to avoid the limitation on prosecutorial discretion dictated by *Blackledge*, it must come forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights. This it has not done in the instant case. Although the information which led the United States Attorney to seek a felony indictment may not have been in his possession until defendant exercised his right to a jury trial and the case was transferred from the magistrate to the district court, the information was available to the government, if not from the outset, at least prior to Goodwin's election of a jury trial.[2] Nevertheless, the conclusion is inescapable that, "but for" his election of a jury trial, defendant would have been tried before the magistrate solely on the lesser charges.

Thus we hold that the due process clause prohibits defendant's conviction on the felony charge and that conviction must be reversed. Because of this conclusion, we have no occasion to consider defendant's contention that the evidence was legally insufficient to convict him of the felony charge.

### III.

Defendant argues for reversal of his conviction under the Maryland fleeing and eluding statute on two grounds. First he contends that Count III of the indictment failed to allege all the elements of an offense under Maryland law because it did not state that the police officer was in uniform, prominently displaying his badge or other insignia of office. Next he contends that, even if he was properly charged under the terms of the statute, the Maryland statute has been preempted by federal law. Neither contention persuades us.

#### A. The Requirements of the Maryland Statute.

The Maryland statute which defendant was convicted of violating prohibits the driver of a vehicle from attempting to elude a police officer by failing to stop, by fleeing on foot or by any other means. The statute applies:

[W]hen a police officer gives a signal to stop, whether by hand, voice, emergency light, or siren, if:

(1) The police officer is in uniform, prominently displaying his badge or other insignia of office; *and*

(2) The police officer, when in a vehicle, is in a vehicle appropriately marked

far-reaching inquiry into the actual motivation of prosecutors, we are not persuaded that they comport with the prophylactic rule set forth in *Blackledge*.

**2.** Even at the magistrate level, the government was not unrepresented. We reject the argument that the lawyer from the Department of Justice on temporary assignment was not generically an "attorney for the government" within the meaning of F.R.Crim.P. 54(c) since

she appeared with the apparent consent of the United States Attorney. We also reject the government's invitation to explore the internal functioning of the federal prosecutorial system in order to determine how, when, and why particular bits of information came to the attention of particular officials. This is precisely the sort of inquiry that the prophylactic approach of *Blackledge* seeks to avoid.

as an official police vehicle. (emphasis added)

Ann.Code of Md., Transp. Art., § 21–904.

While the indictment charged that defendant attempted to elude a police officer who had given him a visual and audible signal to stop and who was in a vehicle appropriately marked as an official police vehicle, it did not allege that the officer was in uniform, prominently displaying his badge or other insignia of office. Defendant contends that because the two conditions set forth in the statute are stated in the conjunctive, both must be alleged and proved, and therefore the count of the indictment alleging the Maryland crime is fatally defective because only one of the conditions is alleged.

■ There can be no doubt that the conditions of the statute are phrased in the conjunctive, but they can be read in the disjunctive if that is the evident legislative intent. *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1979); *George Hyman Construction Co. v. OSHA*, 582 F.2d 834, 840 n.10 (4 Cir. 1978). We think that the common-sense meaning of the statute is that it applies if the officer is in uniform and is prominently displaying his badge, but that the statute applies also if the police officer, however garbed, is in an officially marked car. The purpose of the statute is to effect compliance with an officer's signal to stop. Not unreasonably, notice of the authority of the officer to give the signal is an essential element of the crime of failing to obey. That notice is given when the officer is on foot and is wearing his uniform and insignia of office, *or*, if the officer is in a vehicle, when the vehicle is marked as an official police vehicle. In the latter instance, additional notice from the wearing of a uniform and displaying an insignia of office is unnecessary, especially when it is remembered that the garb of the policeman within the official police vehicle may not even be visible.

A contrary reading would lead to some bizarre results. If both conditions must be alleged and proved in order to render § 21–904 applicable, a motorist with impunity could ignore a signal to stop from a plainclothes policeman in an official police car or an off-duty policeman in an official car. We do not think that these possibilities were intended by the Maryland legislature.

B. Preemption of the Maryland Statute.

The principles of preemption to preclude the bringing of charges under the Assimilative Crimes Act, 18 U.S.C. § 13, have recently been canvassed by us in *United States v. Eades*, 615 F.2d 617 (4 Cir. 1980) and 633 F.2d 1075 (4 Cir. 1980) (in banc), and need not be repeated here. Defendant claims preemption by 36 C.F.R. § 50.29(b) which provides:

> All traffic regulations applicable in areas covered by this part shall be observed by the operators of vehicles, equestrians, and by pedestrians who shall also comply with official traffic signs and signals, and traffic direction by voice, hand or whistle, from any member of the United States Park Police, Metropolitan Police, Park Rangers or special policemen, properly equipped with police badge on duty in an area covered by this part. These directions may include signals for slowing down, stopping, backing, approaching or departing from any place, the manner of taking up or setting down passengers, and the loading and unloading of any material.

Although defendant concedes that the regulation does not track the language of § 21–904, he argues that the regulation governs the same generic acts as the statute proscribes, particularly since a signal to stop given by a police officer is an element of the statutory crime.

■ We are not persuaded. As its text demonstrates, the thrust of the statute is to render criminal eluding a police officer under the circumstances therein defined. The thrust of the regulation is traffic and pedestrian control by an officer on foot. The objectives of the statute and of the regulation are quite different. Indeed we do not think that defendant could have been found guilty of violating the regulation. It makes

criminal disobedience of "voice, hand or whistle" directions; defendant was convicted of eluding the emergency light and siren signals given by the police officer. We see no preemption.

AFFIRMED IN PART; REVERSED IN PART.

WIDENER, Circuit Judge, concurring and dissenting:

While I concur in the result obtained by the majority in affirming the conviction of the misdemeanor of fleeing and eluding a police officer, I respectfully dissent to overturning the conviction of the felony of assaulting an officer in violation of 18 U.S.C. § 111.

As the majority correctly notes, *Bordenkircher* "held that a prosecutor does not violate due process by threatening to increase charges in the course of plea bargaining and then following up on that threat after plea negotiations break down." P. 253. Applying *Bordenkircher* to our case, if the government had threatened to prosecute Goodwin for assaulting the officer during the plea negotiations which did take place, and then had indicted Goodwin for that crime when the plea negotiations broke down, such conduct would have been approved under *Brodenkircher*. But because of the lack of a threat by the prosecutor to indict, the majority sets aside the conviction because "the circumstances surrounding the felony indictment [the assault on the officer] give rise to a general risk of retaliation." P. 253. The court now holds that while an expressed threat of retaliation will not suffice to set aside a conviction because of *Bordenkircher*, merely a general risk of retaliation without the expressed threat will suffice. If we analyze what the prosecutor did in *Bordenkircher*, we see that in that case he deliberately threatened the defendant with indictment for an additional offense in order to discourage trial, and to encourage a guilty plea, and the prosecutor expressly so advised the defendant before trial. *Bordenkircher* at 358, n.1, 98 S.Ct. at 665 n.1. In our case, there is no intimation that the prosecutor was acting with vindictiveness in seeking the indictment for assaulting the officer, and the majority so finds. P. 252. Neither did he make any attempt to discourage any exercise of Goodwin's right to trial by jury. Thus, what the majority now adopts is a *per se* rule, the effect of which is that a prosecuting attorney must see to it that formal charges are *initially* filed for the most serious offense of which a defendant may be guilty or else forever forfeit the right to so prosecute him if the defendant contests the prosecution in any way.

I doubt that we should follow our *Johnson* case so far and that it is any authority for the proposition relied upon following the decision in *Bordenkircher*. An en banc court is not needed, of course, to accept a superseding opinion of the Supreme Court, and, as we had to, we have so held in *Marzullo v. Maryland*, 561 F.2d 540 (5 Cir. 1977).