## WILLIAM L. ADAMS v. STATE OF MARYLAND

[No. 1015, September Term, 1980.]

*Decided April 13, 1981.*

The cause was argued before THOMPSON, LOWE and WEANT, JJ.

*George L. Russell, Jr.,* with whom was *Kenneth L. Thompson* on the brief, for appellant.

*Michael A. Anselmi, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A.*

448

*Swisher, State's Attorney for Baltimore City,* and *John Prevas, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Through an admission by the State we are informed that on or about September 24, 1979, William L. Adams was charged in the Criminal Court of Baltimore with:

> "a single count of Conspiracy to Violate the lottery laws. The State further admits that Judge Perrott dismissed the charging document [on January 16, 1980] because Judge Karwacki did not sign the statement of charges and the summons; affixing his signature twice to the same document instead of once. The State further admits that when new summonses were filed, [the next day] three counts of Conspiracy were charged."

Appellant conceded below that there was no animosity in the heart of the prosecutor giving rise to these increased charges so hard on the heels of his successful skirmish.[1] He even concedes for purposes of argument that the State's

---

1. At a hearing on his motion to dismiss, appellant's counsel said:

"First of all, Your Honor, this motion is not addressed, in any fashion or form, towards Mr. Prevas as an individual. Nor does it have anything to do with Mr. Prevas' feelings about Judge Perrott's rulings. I hasten to bring this out, because in his reply, he stated that no vindictiveness has occurred, he seemed to suggest it was against — he's had some ill feelings because Judge Perrott dismissed it. That's not the issue."

\* \* \*

"The Defendant need not prove that he was an actual victim of retaliation under the rule, but only that he has a realistic apprehension that the prosecutor has retaliated for his exercise of his rights. And with my personal knowledge of Mr. Prevas in this case, not to hint Mr. Prevas personally retaliated against the Defendant, that clearly is not our position, but we state that the law states if the Defendant has a realistic apprehension that the prosecutor has retaliated for his exercise of his rights, the rule has been applied in a number of circumstances beyond the retrial after successful appeal —"

explanation of having detailed the charges out of an abundance of counts, not only against appellant but also against thirty-three co-defendants, may have had no relation at all to the temporary success appellant achieved by Judge Perrott's technical dismissal. Pointing to *Blackledge v. Perry*, 417 U.S. 21 (1974) (which was predicated upon *North Carolina v. Pearce*, 395 U.S. 711 (1969)), he argues that where the circumstances create "an appearance of vindictiveness," a "heavy burden" is thrust upon the State to demonstrate "that the increase in the number of charges against Appellant was not due to any vindictive motive."

> "Appellant [then] submits that the facts of this case and the coincidence of events presented 'such overwhelming circumstantial evidence' that the additional charges were filed in retaliation for Appellant's successful challenge to the legality of the original charging document and thus creates such a strong presumption of vindictive motive and such a substantial possibility of vindictiveness as to be sufficient to establish *per se* a violation of due process."

An exhaustive briefing of cases throughout the country is referred to in support of his argument, the most factually apposite case being *United States v. D'Alo,* 486 F. Supp. 954 (D.R.I. 1980).

The State, on the other hand, in an equally well-done brief, dislodges a few authorities relied upon by appellant and argues that the standard igniting an assessment of prosecutorial conduct is not the mere "appearance of vindictiveness" but rather "a realistic likelihood of vindictiveness." The State provides a succinct synopsis of most of the cases.

> "A synthesis of these decisions reveals three distinct approaches to the issue of prosecutorial vindictiveness. See *United States v. Andrews,* 633 F.2d 449, 453 n. 4 (6th Cir. 1980). The Ninth Circuit decisions, upon which Appellant heavily relies, hold

that where a prosecutor either substitutes a more severe charge or adds on charges after a defendant exercises a procedural right, there is an 'appearance of vindictiveness' which the State has the 'heavy burden' to dispel. See *United States v. Groves,* 571 F.2d 450 (9th Cir. 1978); *United States v. Alvarado-Sandoval,* 557 F.2d 645 (9th Cir. 1977); and *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976). It is the rule of the Fifth and Sixth Circuits '. . . that the mere possibility that prosecutorial . . . conduct may be vindictive is insufficient to trigger judicial sanctions.' *United States v. Andrews,* 633 F.2d at 453, and *United States v. Thomas,* 617 F.2d 436 (5th Cir. 1980). Only where there exists a 'realistic likelihood of vindictiveness' or 'actual vindictiveness' can a defendant invoke judicial sanctions. The State, however, must be given the opportunity to rebut the claim by 'an objective on-the-record explanation showing non-vindictiveness.' *United States v. Andrews,* 633 F.2d at 456. Other circuits have dealt with the issue of prosecutorial vindictiveness on an 'ad hoc' basis. See *United States v. Andrews,* 633 F.2d at 453, n. 4, *United States v. Jamison,* 505 F.2d 407 (D.C. Cir. 1974). *Lovett v. Butterworth,* 610 F.2d 1002 (1st Cir. 1979), *cert. denied,* 447 U.S. 935, 100 S. Ct. 3038 (1980), and *United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976)."

Relying primarily on *Andrews,* the State argues that the circumstantial chronological sequence of events is insufficient to ignite an inquiry. Beyond that however, since inquiry was had, the State is satisfied that it had rebutted the inference of vindictiveness, pointedly noting that the increased charges could hardly have been vindictively prepared and filed so precipitously, and further noting that they were circumstantially justified by having included the same treatment for thirty-three others. Those circumstances so obviously support appellee's denial of vindictiveness, the

State argues, that the trial judge was not clearly in error when he ruled in its favor.

— *Blackledge* —

Our reading of *Blackledge* compels our conclusion that the trial judge should not have determined whether retaliation actually occurred in this case. It was sufficient that the apparent circumstances surrounding the enhanced charges gave rise to a genuine risk of retaliation. Like the defendant in *Blackledge*,[2] appellant faced increased charges brought by a prosecutor who had an incentive to deter defendants from exercising a right that would "require increased expenditures" of prosecutorial time. *Id.* at 27.

In *Blackledge,* the Supreme Court held that the very bringing of more serious charges following a defendant's exercise of a right violates due process as defined in *Pearce, supra.* The rationale was not grounded upon the proposition that actual retaliatory motivation must inevitably exist. It was predicated (as was *Pearce*) upon the concern that the fear of vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction. *Blackledge, supra* at 28; *Pearce, supra* at 725. Due process, the Court held, requires that a defendant be freed of the apprehension of such a retaliatory motivation.

> "A person convicted of an offense is entitled to pursue his statutory right . . . without apprehension that the State will retaliate by substituting a more serious charge for the original one, thus subjecting him to a significantly increased potential period of incarceration." *Blackledge, supra* at 28 (footnote omitted).

---

**2.** Blackledge exercised a right of appeal from a misdemeanor conviction of assault with a deadly weapon in a North Carolina District Court to a trial de novo in the Superior Court of the State. The State then indicted him for the felony of assault with a deadly weapon with intent to kill and inflict serious bodily harm.

We agree with the United States Court of Appeals for the Fourth Circuit in *United States v. Goodwin,* (4th Cir. 637 F.2d 250, 1981), which construes *Blackledge* as suggesting no balancing test. Judge Winter pointed out for the Court that *Blackledge* "adopts a prophylactic rule designed to spare courts the unseemly task of probing the actual motives of the prosecutor in cases where objective circumstances *suggest* a realistic possibility of vindictiveness." *Goodwin,* (Emphasis added). *See also United States v. Johnson,* 537 F.2d 1170 (4th Cir. 1976).

There is, according to Judge Winter, one narrow escape valve:

> "If the government wishes to avoid the limitation on prosecutorial discretion dictated by *Blackledge,* it must come forward with objective evidence to show that the increased charges could not have been brought before the defendant exercised his rights." *Goodwin,* at 255.

This narrow exception was suggested in *Blackledge* by footnoting *Diaz v. United States,* 223 U.S. 442 (1912), as an example of a case wherein it was impossible for the prosecutor to proceed at the outset on the more serious charge.

> "In that case the defendant was originally tried and convicted for assault and battery. Subsequent to the original trial, the assault victim died, and the defendant was then tried and convicted for homicide. Obviously, it would not have been possible for the authorities in *Diaz* to have originally proceeded against the defendant on the more serious charge, since the crime of homicide was not complete until after the victim's death." *Blackledge, supra* at 29 n. 7.

Such evidence was not forthcoming in the instant case, and even the explanation that was presented leaves an implausible void in the State's attempted justification that because the police

> "could not isolate one statutory section that the defendant conspired to commit, but pointed equally to three,"

the state's attorney's office directed the police to file a three-count conspiracy document,

> "choosing to worry about merger at the trial."

Notwithstanding the fear that a charge of conspiracy "to violate the gambling laws" as was originally charged may have been somewhat vague, the State offers no justification or explanation of why the subsequent charge could not have alleged in a simple count one conspiracy to violate the three sections of the Code, rather than three separate conspiracies to violate the enumerated sections. As so charged, appellant was exposed to a sentence three times that which was originally facing him. *See Albernaz v. United States,* 49 U.S.L.W. 4237 (decided March 9, 1981).

When the first attack came upon the technicality of a missing signature, that could have been obviously easy to remedy instead of consuming such valuable court time in a meaningless argument. Once lost in fact, the same charge could have been reinstated, but assuming at the time the State was concerned with its lack of specificity, it could have nol prossed and recharged appellant without ever seeking court approval. In that instance the State might even have charged separate counts without the suggestion of a realistic possibility of vindictiveness. Indeed, had it chosen to nol pros even now, it could have averted this appeal by recharging appellant properly without suggestion of vindictiveness. Even upon reversal here, we know of aught to foreclose recharging appellant properly but without the added exposure which suggests retaliation.

We hasten to note that there is nothing in the record to indicate personal animosity by the prosecutor. In fact appellant conceded as much at argument. The courts, however, have assumed the mien of Calpurnia and are oft times as much concerned with the appearance of propriety as with the fact of it. An accused, fighting to prove his innocence, must

feel no untoward restraints. That is the underlying theme of *Blackledge* as interpreted by *Goodwin* and as intended by the Supreme Court.

While we are bound by the Supreme Court, we are not bound by other federal holdings. We are, however, persuaded in this case that *Goodwin* properly interpreted *Blackledge*. Had we not been persuaded by the reasoning, the foreseeable practicalities would have influenced us, for if we ruled contrary to *Goodwin* and appellant were convicted, the *Goodwin* rule could be applied by the federal courts on petition for habeas corpus, wasting more judicial time. Even minimal applications of common sense could spare us great public expense. Unless we learn to swallow some pride and begin to treat technical oversights (here, one of two signatures overlooked) as technical oversights rather than as opportunities to create constitutional issues wending their way upward in the appellate process, our system of jurisprudence stands the jeopardy of Ben Franklin's kingdom — lost for the want of a horseshoe nail.

*Judgment reversed.*
*Costs to be paid by Mayor and City*
*Council of Baltimore City.*