**STATE of Delaware,**

v.

**Robert J. MORAN, Defendant.**

Superior Court of Delaware,
New Castle County.

Submitted Dec. 20, 2002.
Decided Dec. 30, 2002.

---

**9.** *Becker v. Hamada, Inc.,* 455 A.2d 353, 356 (Del.1982).

**10.** 673 A.2d at 159.

Joelle M. Wright, Deputy Attorney General, Department of Justice, Wilmington, for the State of Delaware.

Thomas A. Foley and Arlen Mekler, Wilmington, for the Defendant.

SLIGHTS, J.

## I. *INTRODUCTION*

The Court considers whether the State was motivated by vindictiveness when it reindicted the defendant, Robert J. Moran ("Moran" or "Defendant"), on additional and more serious charges after the trial on the original indictment ended in mistrial. Moran has moved to dismiss the new indictment on the grounds that the State has violated his rights to due process and speedy trial as guaranteed by the Delaware and United States constitutions and Rule 48 of the Delaware Superior Court Criminal Rules.[1] For the reasons that follow, the motion to dismiss is **DENIED**. The State has adequately demonstrated a justification for the reindictment free of vindictive purpose.

## II. *FACTS*

On February 11, 2002, Moran was indicted by the grand jury on thirty eight

---

**1.** U.S. Const amend. V and XIV; Del. Const. art. 1, §§ 7, 8; Del.Super. Crim. R. 48.

counts of Rape Third Degree and one count of Rape Second Degree. The Rape Third Degree charges arose from a consensual sexual relationship Moran allegedly carried on with his children's babysitter from April, 2000 through June, 2001. The sole count of Rape Second Degree arose from a non-consensual sexual encounter with the babysitter which allegedly occurred when the babysitter sought to terminate the relationship. Trial was scheduled for September 4, 2002.

Prior to trial, Moran moved to compel the State to file a bill of particulars with respect to the specific dates and locations of the alleged offenses.[2] The State opposed the motion because it was unable to provide such specifics. Rather, the State was able to offer only a general time frame within which the sexual relationship was ongoing. With respect to location, the State advised the Court and defense counsel that all of the sexual encounters occurred within Moran's home. The Court denied the motion for bill of particulars but did order the State to produce the alleged victim's statement to police in advance of trial.

Approximately two weeks prior to trial, the State advised defense counsel that a sexual encounter occurred on a date in April, 2000 not previously disclosed and not referenced in the indictment. Five days before trial, the State provided defense counsel with the alleged victim's statement to police in which, *inter alia,* she advised the investigating officer that the relationship with Moran began as early as the summer of 1999 (almost a year prior to the time frame alleged in the indictment). On the eve of trial, the State advised defense counsel that a recent interview of the alleged victim revealed additional uncharged criminal conduct including another non-consensual sexual encounter with Moran and several of his friends. The State also advised the defendant for the first time that some of the sexual encounters had occurred outside of the Moran home.

Moran moved *in limine* to exclude any reference to the uncharged sexual conduct. The Court granted the motion on the ground of unfair surprise. Specifically, the Court observed that the State voluntarily had advised defense. counsel of the parameters of the alleged criminal conduct by letter dated May 1, 2002 (four months prior to trial). The Court concluded that, having done so, the State could not dramatically expand the "playing field" by advising the defendant of additional uncharged criminal conduct on the eve of trial. The Court did not address Moran's arguments under D.R.E. 404(b).

During trial, the State sought guidance from the Court regarding the introduction of evidence relating to the onset of the relationship between the babysitter and Moran in the summer of 1999. The State sought to introduce evidence of a kiss and some above-the-clothing touching that occurred in the summer of 1999 as a prelude to the more involved sexual relationship which followed. The 1999 encounter was not charged in the indictment. The Court allowed the evidence upon concluding that it was inextricably intertwined with evidence relating to the charged sexual offenses.[3] The Court admonished the State, however, that its ruling did not extend to other, more involved, uncharged sexual encounters. Nevertheless, during her testimony, the babysitter referred to an incident of oral sex with Moran which was not charged in the indictment and which oc-

---

**2.** *See* Del.Super. Crim. R. 7(f).

**3.** *See generally, Pope v. State,* 632 A.2d 73 (Del.1993).

curred outside of the time frame alleged in the indictment. Moran moved for a mistrial and the Court granted the motion.

In the course of rendering its decision on the motion for mistrial, the Court noted specifically that it did not believe the State had acted in bad faith. The prosecutor did not "goad" the defendant into moving for a mistrial.[4] Rather, the State was confronted with a situation where an alleged victim was revealing information to the prosecutor in piecemeal fashion. This dynamic made it difficult for the State to comply with its discovery obligations and to present its case in an orderly fashion consistent with the Court's pretrial rulings. Defense counsel agreed with the Court's observations in this regard. On reflection, it is now apparent to Court that the fluid nature in which the alleged victim revealed her allegations to the State made it difficult for the State properly to present the case to the grand jury in the first instance.

On September 13, 2002 (nine days after the mistrial), the State interviewed the alleged victim again. Based on her new revelations as provided during the interview, the State advised defense counsel "not [to] rely upon any prior representations made by the State regarding the date the sexual contact and/or intercourse started between the defendant and the victim."

The grand jury returned a second indictment against Moran on September 23, 2002, less than three weeks after the mistrial was declared. In the second indictment, the State changed some of the dates of the original Rape Third Degree charges, dropped some of the Rape Third Degree counts from the first indictment, added an Unlawful Sexual Contact Second Degree charge (apparently arising from the kiss and touching that allegedly occurred in 1999), added a Rape Third Degree charge arising from alleged encounters in 1999, and added another Rape Second Degree charge (apparently arising from the alleged "gang rape" in the summer of 2000).

Moran moved to dismiss the second indictment on November 8, 2002. The State has filed a response, the Court has heard oral argument, and the matter is now ripe for decision.

## III. *DISCUSSION*

■ When the State reindicts a defendant after a mistrial, there is good cause for concern. The Court must be sensitive under these circumstances to the chilling effect such a maneuver may have on defendants who wish to exercise their right to seek a mistrial in appropriate circumstances.[5] Needless to say, a defendant would be dissuaded from seeking a mistrial if he believed that a vindictive prosecutor, in retaliation, would have unfettered access to the grand jury to present more serious charges based on the same offense conduct. To address this concern, our Supreme Court, following the lead of the United States Supreme Court, has adopted a strict prophylactic rule: if a reindictment is pursued by a "vindictive" prosecutor, the Court will answer by dismissing the indictment as a violation of the defendant's due process rights.[6] The rule, thusly stated,

**4.** *See Sudler v. State*, 611 A.2d 945, 948–49 (Del.1992)(double jeopardy will bar retrial only if prosecution intentionally goads the defense into requesting a mistrial).

**5.** *See Johnson v. State*, 396 A.2d 163, 165 (Del.1978)(citing *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974)).

**6.** *Id.* ("in the context of a colorable claim of prosecutorial vindictiveness by an 'upping the ante' situation, the prosecutor must justify bringing a more serious charge in the same manner as would a judge ... when inflicting increased punishment.")

begs the question: on what bases will the Court conclude that a reindictment was the product of prosecutorial vindictiveness?

Use of the term "vindictive" first surfaced in due process jurisprudence in the United States Supreme Court's decision in *North Carolina v. Pearce.*[7] There, the defendant challenged the constitutionality of the trial court's harsher sentence at the conclusion of a retrial after the defendant had successfully challenged his first conviction on appeal. The Court concluded that while the constitutional protections against due process violations, equal protection violations and double jeopardy are not *per se* offended by an increased sentence on retrial, the trial court violates due process by punishing a defendant vindictively for exercising his right to appeal an unlawful conviction.[8] The Court determined that vindictive sentences are "patently unconstitutional" and that the deterrent effect of such sentences creates an inherent threat to the exercise of constitutional rights.[9] To protect against this threat, the Court adopted a prophylactic rule which requires a trial judge who increases the severity of a sentence after retrial affirmatively to state on the record his reasons for doing so. And the reasons must include "objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding."[10] In the absence of a satisfactory explanation, the harsher sentence will be vacated as a violation of due process.

*Blackledge* extended the concept of vindictiveness to prosecutors. In *Blackledge,* the Court considered the trial court's denial of Blackledge's motion to dismiss a reindictment. Blackledge had appealed *de novo* his conviction in a lower trial court only to be confronted with a reindictment on more serious charges in a higher trial-level court. Extending the due process protection against judicial vindictiveness to prosecutorial vindictiveness, the Court held:

> A prosecutor clearly has a considerable stake in discouraging convicted misdemeanants from appealing and thus obtaining trial a trial *de novo* in the Superior Court, since such an appeal will clearly require increased expenditures of prosecutorial resources before the defendant's conviction becomes final, and may even result in a formerly convicted defendant's going free. And, if the prosecutor has the means readily at hand to discourage such appeals - - by 'upping the ante' through felony indictment whenever a convicted misdemeanant pursues his statutory appellate remedy - - the State can insure that only the most hardy defendants will brave the hazards of a *de novo* trial.[11]

Like *Pearce, Blackledge* sought to address a defendant's legitimate fear of vindictive consequences flowing from his pursuit of available rights and remedies in the course of criminal prosecutions. Because the fear can exist even in the absence of an actual retaliatory motive, the Court held that the defendant need not establish actual bad faith or vindictiveness.[12] And, in the context of a reindictment on more serious charges after a defendant exercises his right to appeal a conviction, the Court

7. 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969).

8. *Id.* at 725, 89 S.Ct. 2072.

9. *Id.* at 724, 89 S.Ct. 2072 (citation omitted).

10. *Id.* at 726, 89 S.Ct. 2072.

11. *Id.* at 27–28, 94 S.Ct. 2098.

12. *Id.* at 28, 94 S.Ct. 2098.

was satisfied that a record devoid of additional offense conduct occurring after the first indictment inherently triggered a "realistic likelihood of vindictiveness." [13]

In reaching its holding that a vindictive prosecution had occurred, the Court spoke without qualification of the defendant's right, sounding in due process of law, not to be reindicted on more serious charges after exercising an appeal *de novo*. Significantly, the matter was not remanded for the trial court to inquire of the prosecutor's motives for reindictment; the conviction on the reindictment was reversed and the prosecution dismissed with prejudice.[14] Contemporary commentators interpreted the decision as absolutely prohibiting increased charges on reindictment.[15] Contemporary jurists concurred.[16]

The Supreme Court of Delaware considered the implications of *Blackledge* in the context of facts quite similar to the facts *sub judice*. In *Johnson v. State*,[17] decided four years after *Blackledge*, the Court considered whether a reindictment after mistrial violated due process. The defendant in *Johnson* originally was indicted on charges of attempted murder second degree and robbery second degree. After a mistrial, the State reindicted on attempted murder first degree and robbery first de-

gree. The prosecutor's only explanation for the reindictment was that the "defendant was undercharged." [18] The Court held that its decision was "governed by the principles announced in Blackledge."[19] Accordingly, the Court concluded that even in the absence of any showing of actual prosecutorial "bad faith," the reindictment offended notions of due process such that vindictiveness must be presumed.[20] The convictions were reversed.[21]

The first sign that *Blackledge's* bright line prophylactic rule might be diluted came within four years of the decision. In *Bordenkircher v. Hayes*,[22] a prosecutor threatened to indict a defendant on more serious charges if he did not accept a plea offer. The defendant, citing *Blackledge*, argued that the threat was vindictive and violative of his right to due process.[23] The majority did not address the issue in terms of vindictiveness, but rather noted simply that "in the 'give-and-take' of plea bargaining there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." [24] The Court declined to disturb the guilty plea.

Then, in 1982, as if on a four-year cycle, the United States Supreme Court addressed *Blackledge* again in *Unites States*

---

**13.** *Id.* at 27, 94 S.Ct. 2098.

**14.** *Id.* at 31 n. 8, 94 S.Ct. 2098.

**15.** *See e.g.* Borman, *The Chilled Right to Appeal From a Plea Bargain Conviction: A Due Process Cure*, 69 N.W. U.L.Rev. 663, 692 (1974).

**16.** *See e.g. United States v. Goodwin*, 637 F.2d 250, 255 (4th Cir.1981)("*Blackledge* suggests no balancing test. It adopts a prophylactic rule designed to spare courts the unseemly task of probing the actual motives of the prosecutor in cases where objective circumstances suggest a realistic possibility of vindictiveness"), *rev'd*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

**17.** 396 A.2d 163 (Del.1978).

**18.** *Id.* at 164.

**19.** *Id.*

**20.** *Id.* at 165.

**21.** *Id.*

**22.** 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978).

**23.** *Id.* at 358, 98 S.Ct. 663.

**24.** *Id.* at 363, 98 S.Ct. 663 (citations omitted).

*v. Goodwin.*[25] There, defendant was charged with several misdemeanor offenses which were scheduled for trial before a federal magistrate when the defendant exercised his right to have the case decided by a jury. The case was assigned to a new prosecutor who promptly sought and obtained a felony indictment.[26] The defendant argued that the reindictment violated *Blackledge's* prophylactic rule. The Court disagreed. Citing *Bordenkircher*, Justice Stevens, writing for the majority, reasoned that the substitution of more serious charges before trial involved both a diminished risk of retaliatory motivation and implicated a much keener interest in prosecutorial discretion than such conduct would present after trial.[27] Under these circumstances, the Court concluded that the presumption of vindictiveness articulated in *Blackledge* was "not warranted in this case" because actual vindictiveness was so unlikely on those facts.[28] The Court went on to observe that prosecutors should not, in all instances, be tethered to the initial charging document throughout the proceedings: "To presume that every case is complete at the time an initial charge is filed … is to presume that every prosecutor is infallible—an assumption that would ignore the practical re-

straints imposed by often limited prosecutorial resources."[29]

And so continued the United States Supreme Court's shading of the bright-line rule of *Blackledge*. In 1986, the Court took a broader view of *Pearce*, allowing that a sentencing judge could articulate facts or circumstances to justify a harsher sentence on retrial even if such facts or circumstances might have been available to him at the time of the initial sentencing.[30] And, in *Thigpen v. Roberts*,[31] the Court suggested in *dicta* that "the *Blackledge* presumption [of vindictiveness] is rebuttable."[32] The circuit courts have sensed the trend away from the irrebuttable presumption and towards a more flexible standard or rule. The approach varies from circuit-to-circuit. On one extreme is the Fifth Circuit which has concluded that a defendant must establish actual prosecutorial vindictiveness to prevail on a due process challenge to a reindictment on more serious charges.[33] On the other extreme is the Ninth Circuit which has required prosecutors to dispel any appearance of vindictiveness.[34] In the middle are the circuits which recognize a presumption of vindictiveness but allow the prosecutor to rebut the presumption with evidence of an appropriate, non-vindictive justification for the increased charges.[35] These courts

**25.** 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982).

**26.** *Id.* at 370, 102 S.Ct. 2485.

**27.** *Id.* at 381–82, 102 S.Ct. 2485.

**28.** *Id.* at 382, 102 S.Ct. 2485.

**29.** *Id.* at n. 14.

**30.** *See Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986).

**31.** 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23 (1984).

**32.** *Id.* at 32 n. 6, 104 S.Ct. 2916.

**33.** *See e.g. United States v. Thomas*, 617 F.2d 436, 438 n. 1 (5th Cir.1980)(applying actual vindictiveness standard to a claim that the prosecutor vindictively increased charges after defendant prevailed on a motion to dismiss charges).

**34.** *See e.g. United States v. Burt*, 619 F.2d 831 (9th Cir.1980); *United States v. Motley*, 655 F.2d 186, 188 (9th Cir.1981).

**35.** *See e.g. Lovett v. Butterworth*, 610 F.2d 1002, 1007 (1st Cir.1979) (endorsing the balancing test); *United States v. Ricard*, 563 F.2d 45 (2d Cir.1977) (same); *United States v. Goodwin*, 637 F.2d 250, 253 (4th Cir.1981), *rev'd.*, 457 U.S. 368, 102 S.Ct. 2485, 73

have sought out a middle ground by endorsing a "balancing test" which allows the court to balance the due process rights of the defendant against the prosecutor's right to seek a reindictment on more serious charges in certain instances where the motive for doing so is not vindictive or retaliatory.[36] In *Andrews,* the court characterized the appropriate inquiry as "an objective one" and couched it in these terms: "whether a reasonable person would think there existed a realistic likelihood of vindictiveness." [37]

As among these approaches, the Court is satisfied that the "rebuttable presumption" of vindictiveness is most in keeping with the lofty notions of due process which animated *Blackledge* and *Johnson* and yet also is in step with the realities of criminal prosecutions. Not all reindictments are motivated by vindictiveness and retribution. Some are pursued by prosecutors who, for legitimate reasons, were unable to present the new charges to the first grand jury that considered the case. Such is the case here.

▮ The record reflects that the State was dealing with a fifteen year-old complaining witness whose first approach to law enforcement was not of her own accord. She was taken to the police station by the parents of one of her friends who became aware of the allegations when their son went to them for guidance after he became aware of the allegations. According to the alleged victim, she did not want to go. When her friend's parents insisted, she agreed to speak to the police only if her own parents were not advised of the allegations. Accordingly, for at least the first encounter with the police, and the first encounter with the Attorney General's office, the alleged victim's parents were not involved.

The prosecutor has indicated that she met with the alleged victim in person on three occasions and spoke with her by telephone on at least four occasions prior to trial. She has represented to the Court that the alleged victim was not able to relate her allegations clearly or completely. Instead, the information was supplied in piecemeal fashion. At first, the alleged victim simply amplified the information she initially had supplied to the police. There was no need to seek further charges because the initial indictment captured this conduct. But as trial grew closer, the alleged victim made additional allegations of sexual misconduct which extended beyond the indictment. The State promptly advised defense counsel of these new allegations as they unfolded. Coming as they did on the eve of trial, however, the State was left to try to admit evidence of the new allegations as uncharged misconduct. The Court would not allow it.

The defendant argues that the prosecutor should have been aware of the additional allegations much sooner in the proceedings such that she either could have presented the additional allegations to the grand jury in advance of the first trial or, at least, disclosed them to defense counsel prior to the eve of trial. During oral argument, defense counsel urged the Court to review the tape of the interview with the alleged victim conducted by the State after the mistrial. He argues that the ease with which the alleged victim

L.Ed.2d 74 (1982) (presumption is rebuttable); *United States v. Andrews,* 633 F.2d 449, 454 (6th Cir.1980) (*en banc*) (same); *United States v. Motley,* 655 F.2d 186, 188 (9th Cir. 1981) (same); *United States v. Jamison,* 505 F.2d 407, 416 (D.C.Cir.1974) (same).

**36.** *Id.*

**37.** *Andrews,* 633 F.2d at 454.

shares her story, and the detail she readily is able to provide to her interviewers, indicates that the State simply was not diligent in its efforts to uncover her story prior to trial. Under these circumstances, it is argued that the State cannot rebut the presumption of vindictiveness.

The Court has reviewed the videotapes of the September 13, 2002, interview of the alleged victim. They reveal a young girl who is remarkably at ease. She tells her story with little need for prompting. Her presentation is cogent and complete. The Court also has reviewed the videotape of the initial interview of the alleged victim on January 25, 2002. In contrast to the September 13 interview, the young girl giving the January 25 interview is timid and uneasy. She is not precise in her descriptions of events and appears to require much in the way of prompting from the police detective who is interviewing her.

The Court can only conclude from the contrasting performances that the alleged victim became more comfortable in her story the more she told it. Whether the reason for this transformation is fabrication, as the defendant will surely argue at trial, or a building confidence enhanced by her first trial appearance, as the State has suggested, the fact is that the visual evidence presented to the Court corroborates the State's explanation for the failure to charge Moran with the additional offenses in the first indictment. The State did not charge the additional offenses because it did not know about them. And it did not know about them because the alleged victim did not disclose the facts supporting them (despite several opportunities to do so) until just prior to trial. In this instance, the State will not be penalized for the shortcomings (justified or not) of a young girl who was unable, or unwilling, to share the full extent of her allegations against the defendant until well after the first grand jury completed its review of the evidence.

The Court has not turned its back on *Blackledge.* The presumption of prosecutorial vindictiveness has been applied; defendant has not been required to establish that the prosecutor acted with a vindictive motive. Rather, the Court has inquired whether there is a "realistic likelihood" that the prosecutor acted vindictively.[38] In doing so, the Court has considered the prosecutor's explanation for her actions to determine whether she has rebutted the presumption of vindictiveness. And, the presumption is strong in this case because the prosecutor has a strong incentive to "up the ante" after a defendant pursues a mistrial in order to discourage future defendants from doing so (and thereby avoid the need to retry cases).[39] But, in this case, the prosecutor has rebutted the presumption of vindictiveness by demonstrating, with objective evidence, that a reasonable likelihood of vindictiveness does not exist here. Stated differently, the presumption of vindictiveness has been rebutted on these unique facts.

The Court is compelled to observe that the defendant's allegations of "sandbagging" are advanced with little grace. He was well aware prior to trial of all of the allegations of additional criminal activity which now are the gravamina of the newly indicted charges. These allegations were not concocted by a vindictive prosecutor after the mistrial. Instead, they were the subject of extensive discussions and motion practice prior to and during trial. Ultimately, the alleged victim's impromptu ref-

**38.** *See Andrews,* 633 F.2d at 454.

**39.** *Blackledge,* 417 U.S. at 27, 94 S.Ct. 2098.

erence to one of the uncharged acts led to the mistrial.

The defendant's appeal to the Court's sense of fairness also misses the mark here. The Court will ensure that the chronology of the alleged victim's allegations against Moran may be explored at length during the cross examinations of the alleged victim and the investigators. If necessary, defense counsel may use the State's written disclosures of the alleged victim's allegations for impeachment. The Court will address these issues in more detail as the testimony unfolds.

■ Finally, the Court rejects defendant's contention that the reindictment violates his right to a speedy trial. His first trial was terminated at his request after a witness revealed information which was ruled inadmissible by the Court and was, by all accounts, highly prejudicial to him. All parties concurred at the time of the mistrial that the testimony was inadvertently elicited by the State.[40] The Court rescheduled the trial at the earliest date on which the Court and counsel were available.[41] Aside from the fact that he is facing additional charges, a circumstance which the Court already has determined comports with due process in this instance, the defendant has not articulated any prejudice resulting from the delay.[42] Rule 48 has not been violated here.

## IV. CONCLUSION

Based on the foregoing, the defendant's motion to dismiss the second indictment is

**DENIED.** The State has rebutted the presumption of a vindictive prosecution. The defendant will receive a fair and speedy trial.

**IT IS SO ORDERED.**

---

**40.** See Middlebrook v. State, 802 A.2d 268, 274 (Del.2002) (in addition to length of delay, court must consider reason for delay when addressing a speedy trial challenge).

**41.** The Court notes that earlier trial dates were offered but defense counsel declined to accept them because of conflicts with his schedule.

**42.** See Id. at 276–77 (court must consider prejudice to defendant); State v. McElroy, 561

A.2d 154, 156 (Del.1989) (trial court should exercise discretion to dismiss a case under Rule 48 "where the unnecessary delay has been attributable to the prosecution and where the delay has been found to work some definable or measurable prejudice to the defendant").

