UNITED STATES of America, Plaintiff-Appellee,

v.

William Russell GREENFIELD, M. D., Defendant-Appellant.

No. 77–5617.

United States Court of Appeals, Fifth Circuit.

June 5, 1978.

James Jerry Wood, Montgomery, Ala., for defendant-appellant.

Barry E. Teague, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before WISDOM, THORNBERRY, and RUBIN, Circuit Judges.

ALVIN B. RUBIN, Circuit Judge:

Following the reversal of his first conviction on three of ten counts of knowingly distributing a controlled substance without a legitimate medical purpose, in violation of 21 U.S.C. § 841(a)(1), *United States v. Greenfield*, 5 Cir., 554 F.2d 179, the defendant was retried on those three counts, and convicted on one. He again appeals. Having considered carefully each of the errors contended to have been committed at the new trial, we find that the defendant was fairly tried and affirm the conviction. *See Greenfield, supra*, 554 F.2d at 180–181.

■ After the jury had begun its deliberations, it put a factual question to the judge. The judge gave a correct answer that he later amended inaccurately, giving the jury an incorrect summary of part of the evidence. However, immediately after the jury left the courtroom, counsel objected, the judge learned that he had been incorrect, and recalled the jury. He then gave what both sides agree to be an entirely correct statement of the evidence. The jury thereafter deliberated for some time, and returned a verdict of "not guilty" on two counts, guilty on the third.

Read in context and taking into account also the court's accurate charge, to which no objection is made, the court's comments do not betray partisanship, add to the evidence, or encroach on the jury's functions. *Compare U. S. v. Cisneros*, 5 Cir. 1974, 491 F.2d 1068. They were finally made entirely accurate, only a short time elapsed from misstatement to correction, and they were not unfair to the defendant.

■ It is also argued that the court erred in permitting the jury to hear and to read transcripts of conversations between the government's agent and Dr. Greenfield, recorded through a transmitter in the agent's shoulder bag and broadcast to a receiver in a van parked nearby. The government attempted to tape conversations on nine occasions, but could produce audible tapes on only five; the remaining four tapes were destroyed, and no records concerning them were kept. The defense argues that the extant tapes are largely inaudible, confusing, and substantially untrustworthy.

This court has not adopted any formulistic standard to guide the admissibility of tapes and transcripts. Tapes are not per se inadmissible because they are partially inaudible; the issue is whether the unintelligible portions "are so substantial as to render the recording as a whole untrustworthy. This determination is left to the sound discretion of the trial judge." *U. S. v. Avila*, 5 Cir. 1971, 443 F.2d 792, 795, *cert. denied*, 1971, 404 U.S. 944, 92 S.Ct. 295, 30 L.Ed.2d 258.

The tapes were available to the defendant from the time of the first trial. The trial judge followed the course we have recommended in holding a prior hearing concerning the intelligibility of the tapes and the accuracy of the proposed transcripts, and in permitting defense counsel to contest the transcript as proposed by the government, *United States v. Onori*, 5 Cir. 1976, 535 F.2d 938, 947–949. Further, the government laid a proper foundation for the admission of the tapes, as required by *U. S. v. Biggins*, 5 Cir. 1977, 551 F.2d 64, 66. The court did not abuse its discretion in permitting the jury to hear the tapes or to read the transcripts in question.

■ The court did not err in permitting the government to introduce evidence of contacts between Dr. Greenfield and the government's agent prior to the earliest date named in the indictment, during which Greenfield also prescribed drugs for the agent. While Dr. Greenfield had been earlier acquitted of six counts of violating 21

U.S.C. § 841 that were predicated on those earlier contacts, the evidence admitted was clearly material to the question whether his continuing prescriptions for the same patient (some written in the names of other people) were for a legitimate medical purpose. The evidence was not inflammatory, the judge issued a proper limiting instruction, and the jury's evidently considered verdict belies the notion that it may have been swayed into convicting the defendant for being a bad individual. Consequently, it cannot be said that judge abused his discretion in admitting evidence under Federal Rules of Evidence, Rules 403 and 404(b).

The judge correctly charged the jury on entrapment; the evidence was not sufficient to require a directed verdict. There was evidence concerning the quantity of drugs prescribed, the nature of the doctor's inquiries, and of his having prescribed drugs for this patient in a name other than the patient's; these warranted the conclusion that no legitimate medical purpose underlay his prescriptions, and that his purpose in prescribing drugs without a legitimate purpose was not "implanted" by the government's informer. *U. S. v. Russell*, 1973, 411 U.S. 423, 435–436, 93 S.Ct. 1637, 1644–1645, 36 L.Ed.2d 366.

The defense finally contends that, even viewing the evidence most favorably for the government, insufficient evidence exists to support the jury's verdict under *Glasser v. United States*, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. There was adequate evidence to support the jury verdict as to February 11, when Greenfield gave the government agent a prescription for Ionamin without seeing her.

For these reasons, the conviction is AFFIRMED.