Nolan Eugene FORSYTH, Appellant,

v.

The STATE of Texas, Appellee.

No. 01-87-00016-CR.

Court of Appeals of Texas,
Houston (1st Dist.)

Dec. 10, 1987.

David R. Bires, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., William J. Delmore, III, Alice Brown, Harris County Asst. Dist. Attys., Houston, for appellee.

Before COHEN, WARREN and DUNN, JJ.

COHEN, Justice.

Appellant was charged with possessing more than 400 grams of pheylacetone and methylamine with intent to manufacture methamphetamine. After his motion to suppress evidence was denied, he pled guilty to a reduced charge of possession of 200 to 400 grams of phenylacetone and methylamine, and the trial court, pursuant to a plea bargain, assessed punishment at 10 years confinement and a $5,000 fine.

Appellant complains that the trial court should have suppressed evidence seized from his hotel room because probable cause was tainted by illegal interception of telephone conversations.[1]

On May 20, 1986, Detective H.W. Burch of the Harris County Sheriff's Department contacted the manager of a motel in Crosby, Texas, who had earlier reported knowledge of a possible drug transaction to the Sheriff's narcotics division. The manager stated that appellant had rented a room, and she had overheard a telephone conversation that another person known as "C.L." would be arriving at approximately 2:30 p.m. in a red and white Chevrolet truck in order to purchase "some meth or crystal"

from appellant. When Burch and two other officers arrived at the motel, the manager stated that she had overheard a second telephone conversation in which co-defendant Conner told a Sharon Turner that "his eyes were messed up, and he was feeling real funny and wanted to know if that had ever happened before" to Turner; Turner replied that he needed to check his "chemicals" and "PH balance." Burch concluded from this that there was a methamphetamine laboratory in the motel room.

Appellant and an unidentified female later arrived at the motel in a black Pontiac, and after a brief trip to his room, appellant returned with Conner and began to unload the vehicle. They removed several boxes, two pieces of glassware resembling flasks used in methamphetamine laboratories, and an electrical generator, which could also be used in a methamphetamine lab. After the equipment was moved into room 128, the two other officers entered room 129; they overheard conversations from room 128. After co-defendant C.L. Young arrived (in a red and white Chevrolet), the officers heard conversations in room 128 about guns and methamphetamine and also heard "snorting sounds." Appellant and his female companion left the motel at 3:15 p.m. C.L. Young exited the room and was arrested by Burch. Conner next left the room, was confronted by an officer, and ran back into the room. Believing that Conner was going for a gun, officers pursued and arrested him.

The room contained a generator, a large box of glassware, electrical equipment, a blender, hot plate, a glass glow heat mantel, a box of rubber hoses, electrical cords, glassware, electrical timers, a mini PH meter, a one gallon plastic bottle with clear liquid marked methylamine 40 percent, a glass bottle of clear liquid marked methanol GR., a plastic bottle of clear liquid, marked aceticanhydride, a plastic bottle with white powdery substance marked sodium acetate, a small glass bottle with clear liquid marked mercuric chloride GR., a

---

1. The trial court granted appellant's motion to suppress pertaining to evidence seized from his car.

small glass bottle with clear liquid marked sulfuric acid GR., and a thermal jug containing a glass jar of brown liquid.

Appellant was arrested later that evening when he returned to the room.

The motel manager did not testify. Officer Burch testified about the telephone conversations as follows:

Q. When you first talked to Renee and she told you about this conversation she had overheard, there were no other details in that conversation except the ones you've just testified to; is that right?
A. She had told—she had told me that a C.L. Young would be arriving in a particular colored truck and the make of it. So, there was more to the conversation than what I have just told you. She got the information from someplace.
Q. Well, the manager, Renee, told you she had overheard a conversation between Tommy Conner and Sharon Turner about checking the PH balance and so forth. Did she indicate to you that the previous information about a dope deal and C.L. coming over there to buy dope was coming from the same means of overhearing a conversation between Tommy Conner and Sharon Turner?
A. I believe—again, I'm not sure. I believe that came from Mr. Forsyth. That's the impression I got. That information was that C.L. had spoke with Nolan Forsyth and that she overheard him stating he would be in route to buy some meth or crystal.
Q. So, if I understand you correctly, what you're saying is that the manager had told you that she had overheard Nolan Forsyth that C.L. was coming over to buy some methamphetamine?
A. The impression I got she had received information—I don't know how she got the information. I'm sure it was over the telephone. She listed one of the conversations was about Mr. Forsyth going to sell the drugs and about Mr. C.L. Young coming over to buy or Mr. Conner talking about his condition.
Q. So, if I understand correctly, Renee the manager indicated to you she overheard two conversations?

A. That's the impression I got when I was talking to her.
Q. You don't know that of your own knowledge?
A. Right.
Q. Now, did she indicate that she had overheard this conversation by what means?
A. She told me telephone.
Q. By telephone?
A. Yes, sir.
Q. She indicated to you that she'd been eavesdropping or listening over the telephone to conversations which were coming out of Room 128; is that correct?
A. She told me she got the information over the telephone. How she was doing it I don't have no idea.
Q. You have no personal knowledge?
A. No, I did not ask either.
Q. You had occasion to use the telephone system when you were on the premises that day?
A. That's correct.
Q. Isn't there a central operator for the motel?
A. There is a switchboard type thing in the lobby.
Q. To your knowledge, in the particular motel there is access to that particular switchboard?
A. That's correct to the best of my knowledge.
Officer Burch also testified that:
Q. Now, going on and during the course of that conversation, she told you that she had overheard this information; is that correct?
A. That's correct.
Q. And she had overheard the other switchboard there in the motel?
A. That's correct.
Q. Did you inquire of her if she as hotel manager listens to all of the conversations of residents at that motel?
A. No, I did not.
Appellant asserts that the "interception" of the telephone communications by the motel manager was illegal. He relies upon Tex.Penal Code Ann. sec. 16.02 (Vernon

**818**

Supp.1987) and 47 U.S.C. sec. 605 (1982). Section 16.02 proscribes a person from "knowingly or intentionally" intercepting a "wire or oral communication." The testimony from the suppression hearing did not establish that the motel manager knowingly or intentionally intercepted a "wire or oral communication." The testimony only established that the police officers did not know "how she got the information," although the manager had overheard some phone conversations. Similarly, appellant failed to establish the applicability of section 605, which proscribes a person receiving, assisting in receiving, transmitting, or assisting in transmitting any interstate or foreign communication by wire or radio and "from divulging or publishing" the contents thereof. Appellant did not establish that the manager had "received" or transmitted the communication, or whether the communications were "interstate or foreign." Finally, appellant did not prove that the conversation was "intercepted" by use of an "electrical, mechanical, or other device" that was "primarily designed for the nonconsensual interception of wire or oral communications." *See* Penal Code sec. 16.02(a), adopting definitions provided in Tex.Code Crim.P.Ann. art. 18.20, sec. 1(3) and (4) (Vernon Supp.1987).

Appellant had the burden of proof in establishing the illegality of an interception of a telephone conversation. *See United State v. Ruppel*, 666 F.2d 261, 271 (5th Cir.), *cert. denied*, 458 U.S. 1107, 102 S.Ct. 3487, 73 L.Ed.2d 1369 (1982); *see also United States v. Phillips*, 540 F.2d 319, 326 (8th Cir.), *cert. denied*, 429 U.S. 1000, 97 S.Ct. 530, 50 L.Ed.2d 611 (1976). He failed to sustain it.

The point of error is overruled.

The judgment is affirmed.