**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Peter E. BAENZIGER, Defendant– Appellant.**

**Nos. 01CA2218, 01CA2219.**

Colorado Court of Appeals, Div. I.

March 11, 2004.

Certiorari Denied Sept. 13, 2004.*

* Justice BENDER and Justice MARTINEZ would grant as to the following issue:

Whether the court of appeals' holding that the trial court did not commit structural error or plain error when it failed to instruct the jury regarding the presumption of innocence and the prosecution's burden of providing the charges against petitioner by proof beyond a reasonable doubt is erroneous.

Justice MARTINEZ would also grant as to the following issue:

Whether the trial court deprived petitioner of his constitutional rights to a fair trial by an impartial court when the court, among other biased actions, (1) repeatedly threatened and eventually held defense counsel in contempt for using petitioner's first name; (2) repeatedly interrupted the petitioner during his testimony, even though the prosecution did not state any objection to the testimony; and (3) allowed the alleged victim to relate to the jury her current family situation while disallowing similar testimony from petitioner's mother.

Ken Salazar, Attorney General, Lauren Edelstein Park, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Law Office of Lindy Frolich, Lindy Frolich, Denver, Colorado, for Defendant–Appellant.

Opinion by Chief Judge DAVIDSON.

Defendant, Peter E. Baenziger, appeals from the judgment of conviction entered upon a jury verdict finding him guilty of second degree sexual assault. He also appeals the revocation of a deferred judgment and sentence in an unrelated case. We affirm.

In October 1999, the victim called defendant to ask him for a ride home. Defendant, his mother, and his sister arrived to pick up the victim, and she was taken to defendant's home. She and defendant went downstairs to play pool alone, where defendant began touching the victim. Over her protestations, defendant had sexual intercourse with the victim.

After the encounter, defendant's mother drove the victim and defendant to the victim's home. The victim did not tell defendant's mother or her parents about the sexual assault, and she did not call the police.

The next day at school, a custodian overheard a conversation between the victim and a friend and took her to a school counselor. After the victim told the counselor she had been sexually assaulted, the counselor called the police.

The prosecution charged defendant with first degree sexual assault and second degree sexual assault, and defendant was convicted of the latter charge.

In an unrelated case, defendant was charged with possession of a schedule II controlled substance, specifically cocaine. Defendant pleaded guilty to the charge and was sentenced to two years deferred judgment. After his conviction in the sexual assault case, defendant's deferred judgment was revoked, and he was sentenced to three years imprisonment in the Department of Corrections. This sentence was to be served consecutively to the sentence in the sexual assault case.

I.

Immediately preceding opening statements, the trial court instructed the jury on the presumption of innocence and the burden of proof. Before closing arguments, however, the trial court did not reinstruct the jury on the presumption of innocence and the requirement of proof beyond a reasonable doubt. Instead, the trial court summarily reminded the jury of its earlier instructions and, without objection, referred the jury to the written instructions printed in the juror notebooks, which included, inter alia, instructions on the presumption of innocence and reasonable doubt.

Defendant contends that the trial court's reliance on the juror notebooks and consequent failure to reinstruct the jury on the presumption of innocence and burden of proof beyond a reasonable doubt was structural error because the jury was not properly aware of the standards by which it was to evaluate defendant's guilt. We disagree.

Structural errors affect the framework in which a trial proceeds. Such errors bring into doubt the fairness of an entire trial by the denial of a basic protection of the judicial process. *Bogdanov v. People*, 941 P.2d 247, 253, *amended*, 955 P.2d 997 (Colo. 1997), *disapproved on other grounds by Griego v. People*, 19 P.3d 1 (Colo.2001); *People v. Willcoxon*, 80 P.3d 817 (Colo.App.2002). As a result, the presence of a structural error requires reversal. *Blecha v. People*, 962 P.2d 931 (Colo.1998).

Examples of structural error include the complete deprivation of the right to counsel, trial before a biased judge, improper exclusion of a member of the defendant's ethnic group from a grand jury, and violation of the right to a public trial. *People v. Willcoxon, supra.* Generally, omissions in jury instructions are not structural error. *See Griego v. People, supra.* However, structural error can occur if the jury is not properly aware of the standards used in determining a defendant's guilt or innocence. *See, e.g., Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993). As in *Sullivan*, this can involve the jury's lack of knowledge of the requirement of proof be-

yond a reasonable doubt, and of its necessary corollary, the presumption of innocence. *See United States v. Doyle*, 130 F.3d 523, 535 (2d Cir.1997)("reasonable doubt standard is the means by which the presumption of innocence is implemented"); *cf. People v. Aragon*, 665 P.2d 137 (Colo.App.1982)(concluding that absence of instruction on presumption of innocence was plain error).

Here, at the outset of the trial, the court stated:

Every person charged with a crime is presumed innocent. This presumption of innocence remains throughout the trial and must be given effect unless after considering all the evidence you are convinced the defendant is guilty beyond a reasonable doubt ... [and] the prosecution has the burden to prove beyond a reasonable doubt each element of the crime charged.

In addition to this initial instruction, the trial court stated before closing argument, "I'm going to read to you the remainder of the instructions of law in the case. As you will recall, I gave you some of the instructions of law before you heard opening statement." The court also told the jury the prior instructions were of equal importance to the instructions that the court was about to give.

In accordance with Crim. P. 16(f), the jury also received written copies of the instructions in their juror notebooks, which the jurors brought into their deliberations.

Because the prior instructions and the notebooks, combined with the trial court's reminder of the importance of these principles, indicate that the jurors were aware of the proper standards for evaluating the evidence, we conclude that no structural error, nor even plain error, occurred, and therefore reversal is not required. *See, e.g., United States v. Payne*, 944 F.2d 1458, 1467 (9th Cir.1991)(no concluding instruction on presumption of innocence, but record supported "a sense that the jury was aware of the presumption of innocence"); *United States v. Ruppel*, 666 F.2d 261 (5th Cir.1982)(despite lack of concluding instruction on presumption of innocence, specific instruction at beginning of trial led to conclusion that jury was aware of such presumption); *United States v. Davila–Nater*, 474 F.2d 270 (5th Cir.1973)(same);

*State v. Jackson*, 139 Ariz. 213, 677 P.2d 1321 (Ct.App.1983)(instruction on burden of proof at beginning of trial coupled with jury's possession of written copies of instruction in jury room precluded reversal).

In reaching this conclusion, however, to preclude any further confusion as to the role of juror notebooks in this regard, we emphasize that as a matter of practice a trial court should read all instructions to the jury before closing argument by counsel.

This practice, set forth in Crim. P. 30, existed in Colorado prior to the adoption of the Colorado Rules of Criminal Procedure in 1961, and remains unchanged. *See Symposium on the Colorado Rules of Criminal Procedure*, 34 Rocky Mtn. L.Rev. 1 (1961). Nothing in Crim. P. 16, permitting written instructions to be included in juror notebooks, indicates that the notebooks are to supplant the requirement of Crim. P. 30 to orally instruct the jury prior to closing arguments.

As pertinent here, the practice of instructing the jurors immediately prior to closing arguments has many benefits, including ensuring that the jury hears and considers all the applicable law before deliberations and aiding the overall comprehension of the jury. *See State v. Johnson*, 173 Ariz. 274, 842 P.2d 1287, 1289 (1992)("Instructions given just before the jury deliberates will likely make more of an impression than those given prior to the presentation of evidence."); *State v. Nelson*, 587 N.W.2d 439 (S.D.1998)(reviewing social science literature supporting practice of instructing jurors immediately prior to closing arguments). It also assists the jury in comprehending the legal context underlying closing arguments that immediately follow. *See People v. Bastin*, 937 P.2d 761 (Colo.App.1996).

Furthermore, because the presumption of innocence and the burden of proof beyond a reasonable doubt are so critical in a criminal case, it is especially important to instruct the jury on those points at the close of the case. *See United States v. Ruppel, supra* (when jury is preinstructed on key principles, repetition of key instructions is still important); *United States v. Davila–Nater, supra*, 474

F.2d at 285("[T]his is a good place to emphasize that trial judges should be careful to give the instruction on the presumption of innocence at the close of the case, so as to leave no room for controversy on this subject."); *State v. Johnson, supra,* 842 P.2d at 1289 ("A few extra minutes to reinstruct on basic legal principles is the modest cost of this additional safeguard to the rights of an accused.").

## II.

Defendant next contends that the trial court erred in admitting the testimony of the prosecution's expert regarding rape trauma syndrome. We again disagree.

■ A trial court has broad discretion to determine the admissibility of expert testimony, and its ruling will not be disturbed on appeal unless it is manifestly erroneous. *People v. Martinez,* 74 P.3d 316, 322 (Colo. 2003).

### A.

■ Defendant contends that the expert's testimony was not helpful to the jury. We disagree.

Here, the record indicates that the victim initially failed to call for help during the assault or disclose the assault to defendant's mother, her family, or the police. Because the "lay notion of what behavior logically follows the experience of being raped may not be consistent with the actual behavior which social scientists have observed from studying rape victims," expert testimony explaining these reactions is helpful to the jury in determining whether this delay should support the conclusion that the sexual assault did not occur. *People v. Hampton,* 746 P.2d 947, 952 (Colo.1987), *abrogated on other grounds by People v. Shreck,* 22 P.3d 68 (Colo.2001). Accordingly, the expert's testimony was helpful to the jury in this particular case to understand the victim's behavior during and following the assault.

### B.

Defendant next contends that the expert's testimony was unreliable. We disagree.

■ It has been repeatedly held that rape trauma syndrome evidence is reasonably reliable. *See People v. Fasy,* 829 P.2d 1314 (Colo.1992); *People v. Hampton, supra.* In response to this clear precedent, defendant presents no reason why such reliability should now be in doubt. Furthermore, the record indicates that the expert was qualified to testify about rape trauma syndrome, and defendant does not challenge these qualifications. As a result, we conclude that the trial court did not abuse its discretion in concluding that the expert's testimony was reliable and admitting this testimony.

## III.

Defendant contends the trial court abused its discretion by refusing to limit cross-examination concerning his prior felony conviction. Again, we disagree.

■ A trial court may not foreclose the use of the name, nature, and date of the defendant's prior felony convictions for impeachment purposes. *People v. Hardy,* 677 P.2d 429 (Colo.App.1983).

Here, during direct examination, defendant testified that he had a prior felony conviction for possession of a controlled substance. At the end of cross-examination, the prosecutor elicited that defendant had a prior felony conviction for possession of a schedule II controlled substance and that the controlled substance was cocaine.

Because the inquiry was limited to the name and nature of the previous conviction, we conclude that no error occurred here.

## IV.

Defendant contends that the trial court was biased against him and deprived him of his constitutional right to a fair trial. We are not persuaded.

■ A defendant alleging a biased trial judge must establish that the judge had a substantial "bent of mind" against him or her. *People v. James,* 40 P.3d 36, 44 (Colo. App.2001).

■ To warrant reversal, the trial court's conduct must have diverged from the re-

quired impartiality to such an extent as to deny the defendant a fair trial. However, a judge's comments that disappoint, discomfort, or embarrass counsel in the presence of the jury, without more, rarely constitute a deprivation of a fair trial. *People v. Coria*, 937 P.2d 386, 391–92 (Colo.1997).

■ Defendant specifically relies upon the trial court's (1) holding defense counsel in contempt for using defendant's first name; (2) interrupting defendant during his testimony; and (3) admitting testimony concerning the victim's current family situation while disallowing similar testimony concerning defendant's family situation.

### A.

As to the contempt ruling, the trial management order provided that counsel must address all parties and witnesses, except children, by last name during trial. Before voir dire, the court also asked counsel to refrain from using first names only and indicated that he would caution counsel in the presence of the jury.

Despite these directions, defense counsel, who we note is not appellate counsel, referred to defendant by his first name nine times during trial. After each of the first five transgressions, the court reminded defense counsel to use defendant's last name. After the sixth transgression, the trial court excused the jury and told defense counsel that "referring to one's own client by first name only is an inappropriate appeal to the sympathy of the jury." The court warned counsel that if he referred to defendant by his first name again, it would hold him in contempt of court in the presence of the jury. Defense counsel referred to defendant by first name two more times. It was only after the ninth transgression that the court stated, in the presence of the jury, "[Defense counsel], I find you in contempt of this Court. We will deal with this matter later. Please proceed." On this record, we conclude that the trial court acted appropriately and with remarkable patience.

### B.

As to the interruptions, the court interrupted defendant's testimony three times on direct examination and once during cross-examination when his responses were beyond the scope of the questions, and the court then told defendant, "Please answer the question and then stop and wait for the next question." At one point, defense counsel also asked defendant, "Could you please answer the question in a responsive way?" Based upon this record, we conclude these interruptions were appropriate.

### C.

As to testimony about the victim's and defendant's respective family situations, when the prosecutor questioned the victim, she testified that she was engaged to be married and had a three-month-old child. This testimony was relevant because it clarified whether the victim's child was a product of the sexual assault. In contrast, defense counsel asked defendant's mother to provide "a little introduction." As such, that line of questioning did not relate to an issue at trial. Accordingly, the court's evidentiary rulings do not support the charge of bias.

Because we have affirmed defendant's conviction in the sexual assault case, we also affirm the revocation of the deferred judgment and sentence in the possession of a controlled substance case.

The judgments are affirmed.

Judge DAILEY and Judge LOEB concur.